# EXHIBIT B

# INSURANCE

# POLICY

**UNITED STATES LIABILITY INSURANCE GROUP**

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

# INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

*[signature: Lauren Railey]*

President

*[signature: Thomas P. Nerney]*

# Real Estate Agents Errors and Omissions Liability Policy

**NOTICE: THIS IS A CLAIMS-MADE POLICY. PLEASE REVIEW THE POLICY CAREFULLY.** UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR **CLAIMS** WHICH ARISE FROM THE RENDERING OR FAILURE TO RENDER PROFESSIONAL **SERVICES** SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND PRIOR TO THE CANCELLATION, TERMINATION, OR EXPIRATION DATE OF THE **POLICY PERIOD** AND WHICH ARE FIRST MADE AGAINST THE **INSURED** AND REPORTED TO THE COMPANY IN WRITING DURING THE **POLICY PERIOD** OR EXTENDED REPORTING PERIOD, IF ANY. THIS POLICY ALSO PROVIDES COVERAGE FOR THE PAYMENT OF **CLAIMS EXPENSES** IN ADDITION TO THE APPLICABLE LIMITS OF LIABILITY, EXCEPT WHEN **CLAIMS EXPENSES** ARE INCURRED BY THE COMPANY'S OBLIGATION TO PAY **CLAIMS EXPENSES** AS RESPECTS DISCRIMINATION AND LOCK BOX COVERAGES.

PROVISIONS

In consideration of the payment of the premium, the undertaking of the **Insured** to pay the Deductible as described herein, and in reliance upon the statements made and information furnished by the **Insured** in the Application and in supporting materials, including any and all agreements, representations and any attachments thereto, and subject to the Limits of Liability stated in the Declarations, Exclusions, Conditions and other terms of this Policy, the Company agrees with the **Named Insured** as follows:

INSURING AGREEMENTS

I. COVERAGES

To pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in the Declarations which the **Insured** shall become legally obligated to pay as **Damages** and to pay all **Claims Expenses** resulting from:

A. **PROFESSIONAL SERVICES** AND **PERSONAL INJURY**
any **Claim** arising out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering or failure to render **Professional Services** for others.

B. DISCRIMINATION
any **Claim** alleging Discrimination by the **Insured** on the basis of age, sex, race, color, religion, disability, familial status, marital status, national origin or sexual preference; provided always that such **Claim** arises out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering of or failure to render **Professional Services** for others.

C. LOCK BOX COVERAGE
any **Claim** arising out of the destruction, of, or loss of use of, tangible property due to the distribution, maintenance, operation, or use of a Lock Box on property not owned or occupied by, or leased to, any **Insured** or any member of an **Insured's Immediate Family**; provided always that such **Claim** arises out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering of or failure to render **Professional Services** for others.

With respect to Coverages A, B and C above:

(1) any negligent act, error, omission, or **Personal Injury** must be committed:
   a. by the **Insured** in the rendering or failure to render **Professional Services** for others; and
   b. during the **Policy Period** or after the Retroactive Date specified in the Declarations; and

(2) all **Claims** arising out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering or failure to render **Professional Services** for others must be:
   a. first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if any; and
   b. reported to the Company in writing no later than 60 days after the end of the **Policy Period** or, if applicable, during the Extended Reporting Period.

II. LIMITS OF LIABILITY AND DEDUCTIBLE

A. Coverage A - **Professional Services** and **Personal Injury**
Subject to the Company's Limit of Liability for Total Policy Aggregate, the Limit of Liability of the Company for each **Claim** for **Damages** only under Coverage A shall not exceed the amount stated in the Declarations as Aggregate for Coverage A.

B. Coverage B – Discrimination
Subject to the Company's Limit of Liability for Total Policy Aggregate, the Limit of Liability of the Company for all **Claims** for **Damages** and **Claims Expense** under Coverage B shall not exceed $150,000 as stated in the Declarations as Aggregate for Coverage B.

C. Coverage C - Lock Box
Subject to the Company's Limit of Liability for Total Policy Aggregate, the Limit of Liability of the Company for all **Claims** for **Damages** and **Claims Expense** under Coverage C shall not exceed $25,000 as stated in the Declarations as Aggregate for Coverage C.

D. TOTAL POLICY AGGREGATE
The total combined Limit of Liability of the Company for all Coverages shall not exceed the amount stated in the Declarations as Total Policy Aggregate as a result of the sum of all:
1. Damages covered by this Policy; and
2. **Claims Expenses** covered under Coverages B and C.

E. DEDUCTIBLE
The Deductible amount stated in the Declarations shall apply to **Damages** only and shall apply to each **Claim**. Upon demand by the Company the Deductible shall be paid promptly by the **Named Insured** to the persons or entities designated by the Company. The **Insured's** duties in the event of a **Claim** as described in Condition K of this Policy apply irrespective of the application of the deductible amount. The Company shall have the right, but not the obligation, to advance sums on behalf of the **Named Insured** within the applicable Deductible.

F. EXTENDED REPORTING PERIOD
The Limit of Liability for the Extended Reporting Period , if any, shall be a part of and not in addition to the amount stated as Total Policy Aggregate limit in the Declarations.

III. SUPPLEMENTARY PAYMENTS
The Company will pay, in addition to the applicable limit of liability:
A. Up to $250 for loss of earnings to each individual **Insured** for each day or part of the day of such **Insured's** attendance at the Company's request at a trial, hearing or arbitration proceeding involving a civil suit against such **Insured** for covered **Damages**, but the amount so payable for any one or series of trials, hearings or arbitration proceedings arising out of the same negligent act, error or omission or **Personal Injury** shall in no event exceed $5,000; and
B. Up to $2,500 per **Policy Period** per **Insured**, but in no event more than $5,000 for all **Insureds** during any **Policy Period**, for attorney fees, and other costs, **expenses** or fees resulting from the investigation or defense of a proceeding before a state licensing board, local real estate board or governmental regulatory body incurred as the result of a notice of a proceeding first received by the **Insured** and reported to the Company in writing no later than 60 days after the **Policy Period**, arising out of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured** covered under this policy.

IV. DEFENSE COSTS, CLAIMS EXPENSES AND SETTLEMENT
With respect to such insurance as is afforded by this Policy the Company shall:
A. have the right and duty to defend any **Claim** against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the **Claim** are groundless, false or fraudulent;
B. at its option, select and assign defense counsel;
however, the **Insured** may engage additional counsel, solely at their **Expense** to associate in their defense of any **Claim** covered hereunder;
C. have the right to investigate any **Claim** and/or negotiate the settlement thereof, as it deems expedient, but the Company shall not commit the **Insured** to any settlement without their consent. If the **Insured** refuses to consent to any settlement recommended by the Company and elects to contest the **Claim** or continue any legal proceedings in connection with such **Claim**, then the Company shall be relieved of any further duty to defend the **Claim**, and the liability of the Company for **Damages** and **Claims Expenses** shall not exceed the amount for which the **Claim** could have been settled as well as the **Claims Expenses** incurred by the Company or with the Company's consent up to the date of such refusal. Furthermore, the **Insured** shall not assume any obligations, incur any costs, charges, or expenses or enter into any settlement without the Company's consent;
D. not be obligated to pay any **Damages** or **Claims Expenses** or to defend, or continue to defend, any **Claim** or suit after the applicable limit of the Company's liability has been exhausted by the payment of **Damages** for **Professional Services** and **Personal Injury** coverages and/or by the payment of **Damages** and **Claims Expenses** incurred by the Company for Discrimination and Lock Box coverages;
E. have **Claims Expenses** incurred by the Company be in addition to the applicable Limit

of Liability except when **Claims Expenses** are incurred by the Company's obligation to pay **Claims Expenses** as respects Discrimination and Lock Box coverage.

V. MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS

The inclusion herein of more than one **Insured** or the making of **Claims** or the bringing of suits by more than one person or organization shall not operate to increase the Company's Limit of Liability. Two or more **Claims** arising out of a single act, error, omission or **Personal Injury** or a series of related acts, errors, omissions or Personal Injury shall be treated as a single **Claim**. Any such **Claim** whenever made shall be considered first made during the **Policy Period** in which the earliest **Claim** arising out of such act, error, omission or **Personal Injury** was first made and all such **Claims** shall be subject to a single Limit of Liability and one Deductible regardless of the number of **Insureds** against whom a **Claim** is made. If the **Insured** has a series of continuous, repeated or interrelated negligent acts, errors, omissions or **Personal Injury**, the first such negligent act, error, omission or **Personal Injury** must have been committed during the **Policy Period** or after the Retroactive Date, if any, and be reported to the Company in writing no later than 60 days after the end of the **Policy Period** or during Extended Reporting Period, if any.

VI. MULTIPLE POLICIES

If this Policy and any other Professional Liability Insurance Policy issued by the Company or by its affiliates or subsidiaries to any **Insured** apply to the same **Claim** or **Claims**, the Company's Limit of Liability for all **Insureds** shall not exceed the highest applicable Limit of Liability available under any one Policy.

VII. DEFINITIONS

The following defined words have a special meaning and are highlighted throughout this Policy by bold print.

A. **"Claim(s)"** means a demand received by the **Insured** for money, including the service of suit or institution of arbitration proceedings against the **Insured**, alleging a negligent act, error, omission or **Personal Injury** of the **Insured** in the rendering or failure to render **Professional Services**. **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief or administrative proceedings before any national, state, regional or local board of real estate agents or any committee or sub-committee thereof, except as provided in Section III.B.

B. **"Claims Expenses"** means:
  1. fees charged by (an) attorney(s) designated by the Company and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, suit or proceeding arising in connection therewith, if incurred by the Company, or by the **Insured** with written consent of the Company, but does not include salary charges or expenses of regular employees or officials of the Company or the **Insured** or fees and expenses of independent adjusters;
  2. all costs taxed against the **Insured** in such suits and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited, whether in court or otherwise, the part of the judgment which does not exceed the limit of the Company's liability thereof;
  3. premiums on appeal bonds and premiums on bonds to release attachments in such suits, but not for bond amounts in excess of the applicable limit of liability of the Policy. The Company shall have no obligation to furnish any bond.

C. **"Damages"** means compensatory judgments, settlements or awards, but does not include punitive or exemplary **Damages**, fines or penalties, the return of fees or other consideration paid to the **Insured**, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under any federal or state law, or matters deemed uninsurable under the law to which this Policy shall be construed.

D. **"Guaranteed Sale Listing Contract"** means a written agreement between the **Insured** and the seller of a property, in which the **Insured** agrees to purchase the property if it is not sold under the listing agreement, in the time frame specified by such agreement.

E. **"Insured"** means:
  1. the **Named Insured**;
  2. any past or present partner, officer, director, employee or independent contractor of the **Named Insured**, solely while providing **Professional Services** on behalf of the **Named Insured**;
  3. the estate, heirs, executors, administrators and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this Policy.

F. **"Insured's Immediate Family"** means the **Insured's** spouse, parent, sibling, son or

daughter, including the spouse or offspring of any thereof.
- G. **"Named Insured"** means the person or entity designated in Item 1 of the Declarations.
- H. **"Personal Injury"** means:
    1. false arrest, detention or imprisonment, wrongful entry or eviction, or other invasions of private occupancy, or malicious prosecution;
    2. the publication or utterance of a libel, slander or other defamatory or disparaging material or a publication or an utterance in violation of an individual's right of privacy.
- I. **"Policy Period"** means the period of time between the Inception Date shown in the Declarations and the effective date of termination, expiration, or cancellation of this Policy and specifically excludes any Extended Reporting Period hereunder, if any.
- J. **"Professional Services"** means services performed by the **Insured** in the **Insured's** capacity as a real estate agent and/or broker, buyer's broker, real estate consultant or counselor, real estate appraiser, property manager, and incidental services rendered by any **Insured** as a notary public or as a member of a formal accreditation, standards review, or similar board or committee.

## VIII. EXCLUSIONS

- A. This Policy does not apply to, and the Company will not defend or pay for, any **Claim** arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:
    1. bodily injury, emotional distress, mental anguish, humiliation, pain, suffering, sickness, disease or death of any person;
    2. violation of any securities law or regulation, including but not limited to; the Securities Act of 1933 as amended or the Securities Act of 1934, as amended, or any state Blue Sky or Securities Laws or similar state or federal statute and any regulation or order issued pursuant to any of the foregoing statutes; or based upon common law principles of liability if made in connection with an actual or alleged violation of any of the aforementioned laws or Acts;
    3. violation of state, federal or governmental anti-trust, price fixing, restraint of trade or deceptive trade practice laws, rules or regulations committed by, at the direction of, or with the knowledge of any **Insured**;
    4. breach of fiduciary duty or inability or failure to collect, transfer or safeguard funds or for the **Insured's** services and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 and its Amendments, or any similar State or local laws or any regulation or order issued pursuant thereto;
    5. **Claim** seeking non-pecuniary injunctive or equitable relief;
    6. destruction of or loss of use of tangible property; however, this Exclusion shall not apply to **Claims** arising out of Lock Box coverage;
    7. insolvency or bankruptcy of the **Insured**;
    8. disputes involving an **Insured's** fee or charges, any personal profit or advantage to which the **Insured** is not legally entitled, or the failure or inability to pay or collect premium, escrow or tax money or the conversion, misappropriation, commingling or defalcation of funds or other property;
    9. **Claim** made by any **Insured** against any other **Insured** unless such **Claim** arises solely out of **Professional Services** performed for the party in a broker-client capacity;
    10. rendering or failure to render **Professional Services** by any **Insured** as an employee, owner, partner, stockholder, director or officer of any sole proprietorship, partnership, or corporation or other business enterprise not listed on the Declarations;
    11. refusal to employ, termination of employment, or employment related coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, emotional distress, mental anguish or discrimination of employment, or other employment-related practices, policies, acts or omissions;
    12. failure or omission to provide, effect or maintain any insurance or bond;
    13. **Insured** making oral or written warranties or guarantees as to any future value of any real property;
    14. performance of, referral to, or failure to perform services as a(n) auctioneer, tax advisor, insurance agent, insurance broker, mortgage banker, mortgage broker or consultant, escrow agent, title abstractor or title agent, home or pest inspector, lease broker, attorney, architect, engineer, accountant, property developer, builder, and/or construction manager;
    15. liability of others assumed by any **Insured** under any contract or agreement, including

any warranty, unless such liability would have attached in the absence of such contract, agreement or warranty;

16. formulation, promotion, syndication, offer, sale or management of any limited or general partnership or real estate investment trust or any interest therein;

17. dishonest, fraudulent, criminal or malicious act or omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of any **Insured**. However, this exclusion shall not apply to attorneys fees, and other costs, expenses and fees for which Supplementary Payments, Section III.B. of this Policy applies;

18. prior or pending litigation or to any **Claim** based upon or arising out of any negligent act, error, omission, **Personal Injury**, or circumstance which has been the subject of any notice given prior to the effective date of this Policy under any prior policy, or any negligent act, error, omission, **Personal Injury** or circumstance likely to give rise to a **Claim** of which any **Insured** had knowledge, or otherwise has basis to reasonably anticipate might result in a **Claim**, prior to the inception of the Policy (including, but not limited to, any prior **Claim** or possible **Claim** or circumstance referenced in the Application).

19. **Personal Injury** based on publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **Named Insured**;

20. real property appraised, controlled, managed, operated, purchased or sold by an **Insured**, in which the same **Insured** or a member of the same **Insured's Immediate Family** have or may have a financial or ownership interest. However, this exclusion will not apply to **Claims** arising out of the sale or purchase of real property by an **Insured** if all the following conditions are met:
    a. if the **Insured** or the same **Insured's Immediate Family** have or may have a twenty-five percent (25%) or more financial or ownership interest in such real property; and
    b. the property was acquired by the **Insured** under a written **Guaranteed Sales Listing Contract**; and
    c. the property was continually offered for sale by the **Insured** or the same **Insured's Immediate Family**; and
    d. the title to the property was held by the **Insured** or the same **Insured's Immediate Family** for less than three hundred sixty-five (365) days.

B. NUCLEAR ENERGY LIABILITY EXCLUSION
This Policy does not apply to, and the Company will not defend or pay for, any **Claim** or demand for contribution arising out of, directly or indirectly resulting from, based upon or in any way involving any radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, "source material", "special nuclear material", and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions of any federal, state or local statutory or common law.

C. CONTAMINANTS, POLLUTANTS, HAZARDOUS MATERIALS, IRRITANTS, TOXIC SUBSTANCES, PATHOLOGICAL CONDITIONS EXCLUSION
This Policy does not apply to, and the Company will not defend or pay for, any **Claim, Damages, Claims Expenses**, loss, cost or expense arising out of, directly or indirectly resulting from, caused by, based upon , in any way involving, or in any way related to either:

1. (a) The actual or alleged presence or absence in, on, under or otherwise connected to real estate, of, or
   (b) Any actual or alleged **Personal Injury** arising out of contaminants, pollutants, hazardous materials, irritants, or pathological conditions, including, but not limited to smoke, vapors, soot, fumes, acids, salt, alkalis, toxic chemicals, liquids or gasses, waste materials, lead, lead compounds, materials containing lead, other metals, radon, asbestos, urea formaldehyde, bacterial or microbial contamination or electromagnetic radiation;

2. The proximity of real estate to any landfill, surface impoundment, incinerator or site polluted or contaminated with contaminants, pollutants, hazardous materials, irritants or pathological conditions set forth in paragraph 1 above;

3. The abatement, mitigation, neutralization, removal or disposal of any of the contaminants, pollutants, irritants or other pathological conditions set forth in paragraphs 1. and 2. above; or

4. Any supervision, instruction, recommendation, warnings, advice, written reports or assurances given or which should have been given in connection with paragraphs 1., 2., and 3. above.

5. Any obligation to share **Damages** with or repay someone else who must pay **Damages** because of any **Claim, Damages, Claims Expenses**, loss, cost or expense as described in paragraphs **1.** through **4.** above.

## IX. AWARENESS OF LOSS AND WHEN CLAIM IS CONSIDERED TO BE FIRST MADE

If during the **Policy Period** or Extended Reporting Period, if any, the **Insured** first becomes aware of any negligent act, error, omission, or **Personal Injury** which was committed after the Retroactive Date and before the expiration or termination date of the Policy, and which might reasonably be expected to subsequently give rise to a **Claim** for which insurance is otherwise provided hereunder, and if the **Insured** gives written notice, which is received by the Company during the **Policy Period** or Extended Reporting Period, if any, then any **Claim** subsequently arising out of such negligent act, error, omission or Personal Injury shall be deemed to have been first made on the date on which such written notice is received by the Company.

Such written notice shall include:

1. particulars sufficient to identify the **Insured** and the potential claimant;
2. the specific negligent act, error, omission, or **Personal Injury**;
3. the **Damages** that have resulted or may reasonably be expected to result from such negligent act, error, omission, or **Personal Injury**;
4. the circumstance by which the **Insured** first became aware of such negligent act, error, or **Personal Injury**.

The **Insured** shall cooperate fully with the Company as provided in Condition **K.**, below, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this Policy as though an actual **Claim** had been reported.

## X. EXTENDED REPORTING PERIOD

**A.** COMMENCEMENT

In case of cancellation or non renewal of this Policy by the Company or the **Insured**, for any reason other than for non-payment of premium or Deductible, or failure to comply with the terms or Conditions of this Policy, the **Named Insured** shall have an automatic sixty (60) day Extended Reporting Period or have the right to purchase an endorsement extending the reporting period, for an additional premium of:

1. 60% of the full annual premium of this Policy, for a period of twelve (12) months; or
2. 95% of the full annual premium of this Policy, for a period of twenty-four (24) months; or
3. 110% of the full annual premium of this Policy, for a period of thirty-six (36) months following the effective date of such cancellation or non-renewal in which to give written notice to the Company of **Claims** first made against the **Insured** during the Extended Reporting Period for any negligent act, error, omission or **Personal Injury** occurring prior to the termination of the final **Policy Period**, and after the Retroactive Date, and subject to the Policy's terms, limitations, Exclusions and Conditions. This right shall terminate, however, unless written notice of such election together with the additional premium is received by the Company or its Authorized Agent from the **Named Insured** within sixty (60) days after the effective date of cancellation or non-renewal.

**B.** RETIREE PROVISION

If the **Named Insured** is designated in Item 5 of the Declarations as:

1. an Independent Contractor and shall cancel or fail to renew this Policy due to retirement of the **Named Insured** from active business; or
2. a Sole Proprietorship and shall cancel or fail to renew this Policy due to retirement of the **Named Insured** from active business; or
3. a Partnership and shall cancel or fail to renew this Policy due to dissolution of the partnership, then the **Named Insured** shall have the right to have an endorsement issued extending the reporting period for this Policy for an additional premium of 125% of the full annual premium of this Policy, for an unlimited period following the effective date of such cancellation or non-renewal in which to give written notice to the Company of **Claims** first made against the **Insured** during this Extended Reporting Period for any negligent act, error, omission, or **Personal Injury** occurring prior to the termination of the final **Policy Period** and after the Retroactive Date, and subject to the Policy's terms, limitations, Exclusions and Conditions. This right shall terminate, however, unless written notice of election together with the additional premium is received by the Company or its Authorized Agent from the **Named Insured** within sixty (60) days after the effective date of cancellation or non-renewal.

**C.  PREMIUM**
At the commencement of any Extended Reporting Period option, the entire premium shall be deemed earned, and in the event the **Insured** terminates the Extended Reporting Period before its term for any reason, the Company shall not be liable to return to the **Insured** any portion of the premium for the Extended Reporting Period.

**D.  LIMITS OF LIABILITY**
The fact that the period during which **Claims** must be first made against the **Insured** and reported to the Company in writing is extended by virtue of any Extended Reporting Period option shall not in any way increase the Limit of Liability of this Policy.  The Limit of Liability available under any Extended Reporting Period option shall be part of, and not in addition to, the Limit of Liability available under this Policy.

## XI. CONDITIONS

**A.  TERRITORY**
This Policy only applies to negligent acts, errors, omissions or **Personal Injury** committed by, and suits or **Claims** brought against, the **Insured** in the United States, its territories or possessions.

**B.  PREMIUM**
All premiums for this Policy shall be computed in accordance with the Company's rules, rates, ratings plans, premiums, and minimum premiums applicable to the insurance afforded herein.  The **Named Insured** shall maintain records of the information necessary for premium computation and shall send copies of such records to the Company or any of its Authorized Agents relating to this insurance.

**C.  ENTIRE CONTRACT**
By acceptance of this Policy, the **Insured** agrees that the statements in the Declarations, Application and any Supplemental Application(s) are the **Insured's** agreements and representations, that this Policy is issued in reliance upon the truth of such representations, and this Policy embodies all agreements existing between the **Insured** and the Company or any of its Authorized Agents relating to this insurance.

**D.  CHANGES**
Notice to any agent, broker or representative, or knowledge possessed by any agent, broker, representative or any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsements issued by an Authorized Agent to form a part of this Policy.

**E.  ASSIGNMENT**
Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the **Named Insured** shall die, or be adjudged incompetent, such insurance as is afforded by the Policy shall apply to the **Named Insured's** legal representative, as the **Named Insured**, but only while acting within the scope of his or her duties as such legal representative and with respect to **Claims** previously reported or otherwise covered under this Policy.

**F.  AUDIT**
The Company may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the final termination of this Policy, as far as they relate to the subject matter of this Policy.

**G.  REIMBURSEMENT OF THE COMPANY**
While the Company has no duty to do so, if the Company pays **Damages** or **Claims Expenses**:
1. within the amount of the applicable Deductible; or
2. in excess of the applicable limit of liability; all **Insureds** shall be jointly and severally liable to the Company for such amounts. Upon written demand, the **Insured** shall repay such amounts to the Company within thirty (30) days thereof.  Failure to pay any amounts indicated above may lead to Policy cancellation.

**H.  NAMED INSURED AUTHORIZATION CLAUSE**
If there is more than one **Insured** under this Policy, the **Named Insured** named in Item 1 of the Declarations shall act for all **Insureds**. Notice of cancellation or non-renewal sent to the **Named Insured** shall serve as notice to all **Insureds**.

**I.  SUBROGATION**
In the event of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery against any person or organization and the **Insured** shall execute and deliver instruments and

2:25-cv-00091-cr    Document 25-9    Filed 05/30/25    Page 11 of 13

papers and do whatever else is necessary to secure such rights.  The **Insured** shall do nothing to waive or prejudice such rights.

J.  NOTICE OF CANCELLATION
This Policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its Authorized Agents requesting a subsequent cancellation or by mailing to the Company or any of its Authorized Agents written notice stating when thereafter the cancellation shall be effective.  Such cancellation shall be calculated on a short rate basis.  This Policy may be cancelled by the Company or any of its Authorized Agents by mailing to the **Named Insured** at the address shown in this Policy written notice stating when not less than thirty (30) days thereafter such cancellation shall be effective.  However, if the **Insured** has failed to pay a premium when due or has failed, after demand, to reimburse the Company for such amounts as the Company has paid in settlement or satisfaction of **Claims** or judgments or for **Claims Expenses** in excess of the applicable limit of the Company's liability or within the amount of the applicable Deductible, this Policy may be cancelled by the Company or any of its Authorized Agents by mailing a written notice of cancellation to the **Named Insured** at the address shown in this Policy stating when not less than ten (10) days thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice either by the **Named Insured** or by the Company or its Authorized Agent shall be equivalent to mailing.

K.  **INSURED'S** DUTIES IN THE EVENT OF **CLAIM** OR SUIT
As a condition precedent to the right of insurance coverage afforded herein, the **Insured** shall:
1.  IN THE EVENT ANY **CLAIM** IS MADE AGAINST THE **INSURED**, GIVE IMMEDIATE WRITTEN NOTICE TO THE COMPANY AS SOON AS PRACTICABLE DURING THE **POLICY PERIOD**, BUT NO LATER THAN 60 DAYS AFTER THE EXPIRATION OF THIS POLICY OR DURING THE EXTENDED REPORTING PERIOD, IF ANY.
2.  IN THE EVENT SUIT IS BROUGHT AGAINST THE **INSURED**, IMMEDIATELY FORWARD EVERY DEMAND, NOTICE, SUMMONS OR OTHER PROCESS RECEIVED BY THE **INSURED** OR BY THE **INSURED'S** REPRESENTATIVES.
3.  Cooperate with the Company and, upon the Company's request, submit to examination and interrogation by a representative of the Company under oath if required; attend hearings, depositions and trials; assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses; assist in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives, meeting with such representatives for the purpose of investigation and/or defense, and disclosing to such representatives all books and records requested by the Company; all without charge to the Company.
The **Insured** shall further cooperate with the Company and take such action as may be necessary to secure and effect any rights of indemnity, contribution or appointment which the **Insured** may have.  The **Insured** shall not demand or agree to arbitration of any **Claim** made against the **Insured** without written consent of the Company.  The **Insured** shall not, except at the **Insured's** own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation or incur any expense without the written consent of the Company.

L.  OTHER INSURANCE
This insurance shall be excess of and not contribute with other existing insurance, unless such other insurance is specifically written to be in excess of this Policy.
When it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the Policy for such **Damages** bears to the total applicable Limit of Liability of all valid and collectible insurance against such **Claims**.

USL REA (5/95)                                                                                                                                           Page 8 of 9

When this insurance is excess, the Company shall have no duty under this Policy to defend any **Claim** or suit that any other insurer or self-insurer has a duty to defend.  However, the Company shall have the right to associate itself with the other insurer or self-insurer in the control, negotiation, defense or appeal of any **Claim** which in the opinion of the Company is or may be insured under this Policy.  If such other insurer or self-insurer refuses to defend, the Company shall be entitled to the **Insured's** right against all other insurers or self-insurers for any **Claims Expenses** incurred by the Company.

**M.** ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, but not until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

**N.** CONFORMITY TO STATUTES

The terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

**This page has been intentionally left blank.**